Plaintiff, U-Drive-It, Inc., is engaged in the business of renting automobiles owned by it to the general public. It conducts its operations in the city of New Orleans. On June 28, 1944, at about 9:00 o'clock p.m., plaintiff rented a Chevrolet automobile to the defendant, Frederick G. Ernst, under a written contract which provided, in part, as follows:
"The customer agrees that the car rented has been inspected, is in first-class condition, and will be returned in like condition * * *."
In connection witlh the agreement, plaintiff required defendant to make a rental deposit of $35. Defendant kept the car in his possession for about 21 hours, or until June 29th at about 6:00 p.m., when it was returned by him to plaintiff's place of business.
During the time he was in possession of the car, defendant drove it a distance of 44 miles.
Claiming that the automobile was returned to it in a damaged condition, in that the entire motor was burned out due to defendant's use of the vehicle, plaintiff brought this suit seeking to recover the damage to the car which it alleges to be the sum of $227.66. It charges that defendant has breached his contract for the reason that, when he accepted possession of the car, it was in first class condition and that it was encumbent upon him to return it in like condition. In addition to the amount of damages claimed, plaintiff also sought recovery of 25% attorney's fees which is provided for in the lease contract.
To this petition, defendant filed an exception of no cause of action which is based on the theory that there is no charge contained in the petition that he was guilty of any negligence in the operation of the automobile while it was in his possession. Coupled with this exception, defendant filed his answer, in accordance with the rules of the First City Court of New Orleans, in which he admitted the contract but denied the damage to the car or that, if it was damaged, it was caused through any fault or negligence on his part.
The exception of no cause of action was overruled and after a hearing on the merits, there was judgment in plaintiff's favor as prayed for. The defendant has appealed from the adverse decision.
In this court, counsel for defendant has re-urged the exception of no cause of action which he claims should have been sustained by the trial judge. He argues that, since this is a suit for damages ex contractu and since the facts alleged merely show that defendant rented a car which he drove only 44 miles and then returned to plaintiff, the petition does not set forth a cause of action because it fails to charge that defendant was guilty of any negligence in the use and operation of the vehicle; that such use, as alleged, was contemplated by the parties to the contract and that, without a charge of some fault on defendant's part, plaintiff's claim cannot be sustained.
[1, 2] We think that the exception was properly overruled. The written contract provides that defendant has inspected the car; that it is in good condition and he promises to return it in like condition. Therefore, in a suit for breach of contract, it was only necessary for plaintiff to allege and prove that the automobile was returned to it in a damaged condition and that it was damaged while it was in defendant's possession and then the burden of proof shifted to defendant to exhibit that the damage was not due to his use of the vehicle. *Page 667 
[3] Counsel for defendant, however, persists that defendant's admission in the contract that he has inspected the car and that he has received it in good condition should be interpreted in connection with the nature of plaintiff's business; that it was not contemplated by either party that defendant would be required to inspect the motor of the vehicle and determine whether there were any mechanical defects therein and that, if the motor failed or became damaged through ordinary use, then no liability would result. This argument, we think, could attain force only after an investigation of the evidence in the case. We agree with defense counsel to the extent that the parties did not contemplate that the renter of the automobile was an experienced mechanic, able to detect defects in the mechanism, and that, if dormant deficiencies became apparent after the car was in possession of the lessee, responsibility would ensue. However, if such defects presented themselves to the lessee while he was operating the vehicle, he owed the duty, as a prudent administrator of the property, to refrain from using it in such manner as to injure or aggravate damage to the machinery. For instance, as claimed in this very case, if the defendant found that the motor became overheated and knocked so badly that it could not be driven with safety, ordinary care would make it apparent that he refrain from further operation of the car as he would be placed on his guard that continued use might result in serious damage to the vehicle. Therefore, we hold that, in view of the contractual stipulation that the car was received by defendant in good working order and obligated him to return it in like condition, the burden was upon him to show that he was without negligence in the use of the vehicle in order to exonerate him from liability under the contract provided, of course, that the evidence sustains plaintiff's charge that the damage it has suffered occurred during the time the car was in defendant's possession.
An examination of the merits of the case reveals the following facts which are not seriously disputed: The defendant operates a business in the city of New Orleans and is the owner of an automobile. Due to the fact that his personal car was undergoing repairs, he decided to rent the automobile in question from plaintiff as he needed transportation in his business and also because he wished to visit the Baptist Hospital where his mother was confined by illness. Mr. Abbott Wooten, a representative of plaintiff who was on duty at plaintiff's garage at the time defendant rented the car, stated, in substance, that defendant was given possession of the car at 9:08 on the evening of June 28th; that it is the custom that a routine test be made of automobiles before they are rented out to the public; that such test is supposed to be made by a porter in the employ of the plaintiff; that he (Wooten) looked over the car and assumes that defendant inspected it; that, as well as he could ascertain, there was nothing wrong with the motor at the time the car was delivered to defendant; that, on the following evening, June 29th, the car was returned by defendant at about 6:36 p.m.; that he then noticed that the motor was knocking badly; that, due to this fact, he telephoned Mr. Fisher, one of the officials of plaintiff company, who advised him not to return defendant's deposit of $35 and that he does not know who moved the car from the driveway of plaintiff's garage as he went off duty shortly thereafter. He further says that it is routine with the company to have damaged cars sent to its mechanical department situated on Baronne Street (the main office and garage is on Canal Street) but he is unable to state whether this procedure was followed in the instant case or not.
Mr. L.E. Sweet, the service manager of Cathey-Chevrolet Company who made the repairs to the car, states that it was towed into the company's garage on July 2nd (or on the third day after defendant had delivered it to plaintiff); that an examination revealed that the motor was burned "completely destroyed, you couldn't run the motor, it would not run, couldn't even be cranked up, was burned red crisp, * * *" and that "I have never seen one burned such as that motor was burned in my experience." He expresses the opinion that the car was damaged as the result of operation without sufficient oil and water and he further says that it is his belief that even the lack of oil would not cause the motor to burn to that extent and that it was probably caused from the lack of water. He further says that, if the automobile was run without water in it, the driver could detect it within ten minutes and that the car would smell so bad that you could not stay in it "or that it would hammer so bad you wouldn't want to be around it."
To the same effect is the testimony of Eugene S. Reynolds, one of the mechanics *Page 668 
of the Cathey-Chevrolet Company, who repaired the damaged vehicle.
Mr. George E. Fisher, Secretary and Treasurer of plaintiff corporation, testified that he instructed employees of the company to send the damaged car to Cathey-Chevrolet Motor Company for repairs and that it is his impression that the car remained in plaintiff's storage place from the date it was delivered by the defendant until the date it was sent to the Cathey Company. This witness was asked, on cross-examination, if he knew whether the car was driven or towed to the storage department of the company. He answered that he did not know who drove it back but he is sure that it was driven and not towed. He said that the company employed a porter named "Joe" to inspect the automobiles rented by it; that Joe was still in its employ but that he was not summoned as a witness at the trial.
Defendant testified at length with respect to his use of the car while it was in his possession. He states that he has driven automobiles for a number of years and owns a car of his own; that he rented the car in question because his automobile was being repaired at the time and that it was necessary for him to have an automobile in order to visit his mother, who was in the Baptist Hospital, and also for business purposes. He further said that, while he is not a mechanic, it appeared to him that the motor of the Chevrolet was working properly when he received possession of the car; that he first noticed that there was something wrong about midnight, while he was driving home from a visit to the lakefront; that the motor bucked a little bit and that, when he reached home, he noticed that it was steaming; that he did not have occasion to use the car again until the following afternoon about 1:30; that, before using it, he had two quarts of oil put in the motor and water put in the radiator; that he drove to the hospital to visit his mother, remaining there for a couple of hours and that, at about 5:30 in the afternoon, he went to a garage operated by a Mr. Kirsch in order to ascertain whether the repairs to his personal automobile had been finished; that, when he reached the garage operated by Mr. Kirsch on Girod Street, Kirsch called his attention to the fact that oil was leaking out of the Chevrolet; that Kirsch put two quarts of oil in it and that he then drove it to plaintiff's garage as his car had been repaired and was ready for use.
Kirsch, defendant's mechanic, corroborates defendant's statement. He says that, when defendant brought the car to his place of business, he noticed oil leaking out of it and that he put two quarts of oil in the motor and followed defendant to plaintiff's garage. He further says that, when he checked the oil in the Chevrolet, the motor was not hot and that he does not know what caused the oil to leak.
Two questions arise as the result of the evidence given in the case, (1) whether plaintiff has proved, by a fair preponderance of evidence, that the damage to the Chevrolet resulted solely from defendant's use of the car and (2), if the evidence warrants such a conclusion, was defendant negligent in operating the automobile under the circumstances?
[4-6] Reverting, for a moment, to the contract between the parties, it is our opinion that the provision in the agreement that defendant has inspected the car and that it has been received in good condition cannot be regarded to mean that defendant would become responsible for latent mechanical defects of the motor but merely that he would be liable for negligence in using the vehicle under circumstances which would prompt an ordinarily prudent motorist to desist from further use of the car as a consequence of obvious mechanical failures. In this connection, it seems clear that the parties to the contract contemplated that the rented car was fit for the purposes of the hiring — that is, mechanically stable for ordinary use; that its motor was filled with water and oil and all other necessary fluids and equipment to transport the lessee a reasonable distance — surely, 44 miles. On this point alone, plaintiff's testimony falls short of making its case certain for, while Mr. Wooten testifies of his belief that the car had adequate oil and water, he did not check the water and plaintiff failed to produce the porter, who had the duty of checking automobiles before rental, to testify that the vehicle was capable of ordinary use. Of course, this failure on the part of plaintiff would not, of itself, be sufficient to exonerate defendant if the evidence otherwise exhibited that defendant nevertheless continued to drive the car when he knew, or should have known, that the motor was burning due to a lack of water and oil. Defendant's testimony on *Page 669 
this point, however, is to the effect that he did not notice anything wrong with the motor of the car until he was coming home from the lakefront about midnight on June 28th when he became aware of a slight knock in it and discovered that the engine was hot upon his arrival home. And he further excuses himself from fault by his evidence that, before attempting to use the car on the next day (June 29th) he had the radiator filled with water and two quarts of oil put in the motor. The slight use which he gave the car on the following day, i.e., going to the hospital to visit his mother, to his mechanic on Girod Street and finally to plaintiff's garage after he had replenished it with oil and water, should not have resulted in the deplorable condition in which it was found by the Chevrolet Company provided the motor of the vehicle had been checked and serviced so as to be suitable for the purposes for which it was leased.
[7, 8] It is true that the trial judge concluded otherwise on this question of fact and we would be disinclined to disturb his finding as manifestly erroneous were it not for the fact that plaintiff has utterly failed to produce any evidence eliminating the possibility that the automobile was not used, or its motor not run, from June 29th at 6:36 p.m., when the car was delivered by defendant to its garage, until two days later on July 2nd when it was sent to the Cathey-Chevrolet Company for repairs. The burden of proof was at all times on plaintiff to show that the damage of which it complains was inflicted upon the vehicle while it was in the possession of the defendant. The evidence produced by plaintiff falls far short of satisfying this burden. Mr. Wooten's testimony is simply that the car was knocking badly when defendant returned it to plaintiff's garage. As to what happened to it from that time until it arrived, two days later, at the Cathey-Chevrolet Company, the record is silent. The porter, whom both Mr. Wooten and Mr. Fisher say was in charge of the vehicles in plaintiff's garage, was not produced nor did anyone else testify whether the car was moved to plaintiff's repair shop or what happened to it during the interval of time elapsing from the date of delivery until it reached the Cathey-Chevrolet Company.
In these circumstances, it seems clear that plaintiff cannot succeed for, as above stated, the burden always rested upon it to establish with certainty that its damage was occasioned during the time in which defendant had possession of the automobile. The gap in the evidence as to what use was made of the car or who handled it from June 29th until July 2nd makes recovery impossible, particularly in view of Mr. Sweet's testimony to the effect that the motor was so badly burned that it could not be started or used for any purpose at the time the car was delivered to him at the. Cathey-Chevrolet place.
For the foregoing reasons, the judgment appealed from is reversed and it is now ordered that plaintiff's suit be dismissed at its cost.
Reversed.