610 So.2d 942 (1992)
Scott T. MINVIELLE
v.
David A. LEWIS, State Farm Mutual Automobile Insurance Company, State of Louisiana Through the Department of Transportation and Development.
No. 91 CA 1803.
Court of Appeal of Louisiana, First Circuit.
November 20, 1992.
*944 Gregory A. Langteau, Metairie, for appellant.
Anthony J. Clesi, Jr., New Orleans, for defendants-appellees Lewis and State Farm.
Timothy Mathison, Slidell, for defendant DOTD.
Before LOTTINGER, C.J., FOIL, J., and COVINGTON[*], J. Pro Tem.
LOTTINGER, Chief Judge.
After a thorough review and evaluation of the record, we are convinced that the evidence supports the facts found and the reasons assigned by the trial judge which we adopt as our own, and affirm at appellant's costs.
AFFIRMED.

REASONS FOR JUDGMENT
Plaintiff seeks recovery of damages sustained in an automobile accident from David Lewis, his insurer, State Farm Mutual Automobile Insurance Company, the State of Louisiana, through the Department of Transportation and Development, and State Farm as the uninsured motorist carrier for the plaintiff. Plaintiff also seeks exemplary damages against defendant Lewis for driving under the influence and causing this accident. Plaintiff settled his claim against the State and now proceeds against the other defendants.
The record establishes that on April 26, 1985, plaintiff was a guest passenger in a vehicle which was driven by Bruce Kincaid in the left lane in a westerly direction on Interstate 10 in St. Tammany Parish at 10:00 p.m. when a vehicle, driven by defendant, David Lewis, in the opposite direction crossed the I-10 median striking the Kincaid vehicle. The accident occurred during a light rain on a very dark portion of the Interstate highway. At the time of the collision, neither Mr. Kincaid nor plaintiff saw the object which collided with the Kincaid vehicle. After the collision, Mr. Kincaid slowed his vehicle, crossed over the right hand lane and came to a stop on the right portion of the paved shoulder, approximately one-half mile from the point of collision. Neither plaintiff nor Mr. Kincaid were injured in this collision.
Upon stopping after the accident, both Mr. Kincaid and plaintiff exited the car and walked to the front of the vehicle to observe the damage to this vehicle. They then proceeded to walk along the paved portion of the highway shoulder back toward the point of collision to see what had struck their car. Plaintiff and Mr. Kincaid were walking abreast of one another with plaintiff positioned toward the outside of the highway when plaintiff fell as a result of stepping on a deteriorated portion of the shoulder suffering damage to his left ankle.
The record further establishes that plaintiff's fall occurred several steps in back of the Kincaid vehicle. The area of the highway where this fall occurred was pitch black. Neither plaintiff nor Kincaid could see anything as they proceeded to walk in back of the Kincaid vehicle. Plaintiff had the presence of feeling a paved shoulder under his feet as he walked prior to falling.
The defendants do not deny that the Lewis vehicle crossed the Interstate median and struck the Kincaid car. Defendants claim that the injuries to plaintiff's ankle did not result from this accident but were caused after the accident when plaintiff fell on the deteriorated paved shoulder of the Interstate. Defendant Lewis also denied that he was driving under the influence of either alcohol or drugs at the time of the accident.
To be actionable, the cause need not be the sole cause, but it must be a cause in fact, and to be a cause in fact it must have a proximate relation to the harm which occurs and it must be substantial in character. Dixie Drive It Yourself Systems v. American Beverage Company, 137 So.2d 298 (La.1962); Miller Car *945 Washes, Inc. v. Crowe, 245 So.2d 485 (La. App.2d Cir.1971). In determining liability, the governing criteria is whether the person creating the danger could or should reasonably have foreseen that the accident might occur. If such was the case, then he is liable notwithstanding an intervening cause. Miller Car Washes, Inc. v. Crowe, supra. The action of the plaintiff in proceeding from the car in which he was riding back to the scene of the accident to see who and what was involved in the accident would be a reasonably foreseeable activity involved in the occurrence of an automobile accident on an interstate highway. This Court is of the opinion that the striking of the Kincaid vehicle by defendant Lewis' vehicle was a proximate cause without which plaintiff's accident would not have happened. Likewise, the highway deterioration is also a proximate cause without which plaintiff's accident would not have happened.
This Court must also consider the allegation that plaintiff suffered injury as the result partly of his own negligence. The record establishes that plaintiff exited the Kincaid vehicle and walked on a pitch black night on the very edge of the paved portion of the highway within a foot or so from the gravel portion of the highway without being able to see the ground where he was walking. This Court finds that plaintiff's actions were negligent and a proximate cause of his injuries.
Therefore, in accordance with Louisiana Civil Code, Article 2323, this Court assigns the following percentages to the negligence of each party: defendant Lewis 40%, defendant State 40%, and plaintiff 20%.
Plaintiff, age 35 on the date of the accident, is a practicing attorney. He testified that he suffered excruciating pain in his left ankle when he fell. The accident occurred on Friday night. Plaintiff did not seek immediate medical attention since he wanted to see a specialist and felt that he would not get adequate medical treatment in a hospital emergency ward. He saw Dr. Harry Hoerner, an orthopedic surgeon, the Monday following the accident. X-rays were taken and plaintiff was given pain medication. The doctor diagnosed plaintiff's injury as a sprain to the left foot and ankle. Plaintiff saw Dr. Hoerner on May 13 and 27, 1985, January 27, April 7, June 12 and August 18, 1986. During the course of this treatment, plaintiff took pain medication, was given an orthopedic stocking on May 13, 1985 and was given a wedge to put under his left heel on January 27, 1986.
In April, 1987, plaintiff was involved in an unrelated accident where he hurt his neck and back. He felt that this subsequent accident did not hurt his lower limbs at all. Prior to the 1987 accident, plaintiff says he had to curtail his swimming and racquetball exercise as a result of the 1984 (sic, 1985) accident. The 1987 accident also hampered plaintiff's dancing and racquetball playing.
Plaintiff testified that in August, 1986 his ankle was still painful and he only walked when necessary. He further testified that he limped for two years and still has trouble walking, avoids all but slow dancing and his ankle still hurts but not as bad as two or three years after the 1984 accident.
Dr. Simian Isaccs, (sic, Simeon Isaacs) a podiatrist, saw plaintiff twice, first on May 30, 1989 and on January 25, 1991. On May 30, 1989, Dr. Isaccs performed a stress inversion tilt test which showed a talar tilt of 11 degrees in the left ankle. He was of the opinion that anything above 4 or 5 degrees would be a significant problem. From his examination, Dr. Isaccs found plaintiff to be suffering from a chronic left ankle instability which was permanent.
In his report dated January 29, 1991, Dr. Hoerner stated that although he had not seen plaintiff since August 18, 1986, and could not definitely state whether plaintiff had any permanent disability, he felt any amount of disability for this injury would be small and could range only between one and five percent of his foot and ankle.
Dr. James T. Williams, an expert in the field of orthopedic surgery, performed an independent medical examination on plaintiff on January 5, 1988. His stress inversion tilt test showed a talar tilt of 7 degrees *946 on the left side. He was of the opinion that a talar tilt of 9 degrees would be in the upper limits of a normal range. Although Dr. Williams administered this stress inversion tilt test in a different manner from Dr. Isaccs, this Court is more impressed with the expertise and testimony of Dr. Williams and gives more weight to his testimony than that of Dr. Isaccs.
The record does not support that plaintiff suffered any permament (sic) disability as a result of this accident.
Defendants attacked the credibility of plaintiff, using the transcript of the trial court proceeding resulting from the 1987 accident. This Court allowed the introduction of this transcript only on the issue of credibility under Louisiana Code of Evidence, Article 607. Although defendants also offered the depositions of Dr. John Clifford, Dr. Bruce Razza and Dr. R.S. Saluga, this Court does not consider these depositions on this credibility issue. It is true that plaintiff attributed a lot of his medical problems to the 1987 accident as shown in the trial transcript and his testimony indicated that his pre-1987 accident activities were greater than he now claims. It is still apparent that plaintiff did suffer an injury from the fall in April, 1985.
The record supports and this Court finds that plaintiff is entitled to the sum of $15,000.00 for the injury to his foot and ankle. Plaintiff is also entitled to recover Dr. Hoerner's bill of $447, Dr. Isaccs' bill of $315 and the bill of $27.01 from Eckerd's Drug store for drugs, totaling $789.02. Plaintiff is entitled to recover 40% of this amount from defendant, State Farm.
Plaintiff also seeks exemplary damages. Recovery of exemplary damages under Louisiana Civil Code, Article 2315.4, requires proof of three elements. First, the defendant was intoxicated or had a sufficient quantity of intoxicants to make him lose normal control of his mental and physical facilities. Secondly, the drinking was a cause-in-fact of the accident. Thirdly, the injuries were caused by wanton and reckless disregard for the rights and safety of others. Bourgeois v. State Farm Mutual Automobile Insurance Company, 562 So.2d 1177 (La.App. 4th Cir., 1990).
Mr. Kincaid testified that on the night of the accident, he saw Mr. Lewis sitting in the driver's seat trying to start his engine. The record does not support why Mr. Lewis was attempting to start his engine. He may have been simply trying to move his car to a safer area, but the record does not support the reason for this action. Mr. Kincaid did not see Mr. Lewis walk and did not hear him speak.
The Louisiana state trooper investigating this accident, Ricky Ricks, had no recollection of the accident independent of his report. Lewis did admit to Trooper Ricks that he had taken prescribed medication before the accident. Although Trooper Ricks felt that Mr. Lewis was impaired by drugs, he only charged him with failure to maintain control and gave him no field sobriety test.
Plaintiff did not see Mr. Lewis walking but testified that he heard him making inaudible noises. Mr. Lewis testified that he was traveling at the time of the accident from his home to his place of employment with Martin Marietta. He testified that he was adjusting the radio on his car when it eased onto slick grass, went into a spin and crossed the highway median, striking the Kincaid car. He admitted that he had no sleep for two days. He had worked the night before the accident and had played golf the day of the accident. He admitted taking medication prescribed by a Dr. Weiss in Slidell for stress and nerves, consisting of one valium and one fiorinal around noon on the date of the accident and one valium and one fiorinal around 6:00 p.m. that day. He testified that he had eaten full meals at noon and 6:00 p.m. on the date of the accident. He denied taking any other drugs except these two prescription drugs and felt that his driving was not impaired by drugs.
The record establishes that Mr. Lewis did have a drug problem. Two weeks after the date of the accident, he voluntarily turned himself in for problems he was having with cocaine, marijuana and painkillers. On January 9, 1984 he pled guilty to possession *947 of a Schedule IV narcotic with intent to distribute.
While the record establishes that Mr. Lewis had a drug problem at the time of the accident, the record does not establish that this drug problem was a factor in causing this accident. It is more likely that the loss of sleep combined with inattentive driving while adjusting the car radio caused this accident than the use of drugs. No field sobriety test was administered to Mr. Lewis and there is very little direct evidence of his actions at the scene of the accident. Therefore, this Court does not find that plaintiff has carried the burden of proof necessary for an award of exemplary damages.
This Court will sign a judgment in accordance with these reasons when one is presented.
Covington, Louisiana this 20th day of March, 1991.
 /s/John W. Greene
 JOHN W. GREENE, Judge
 Division "D"
NOTES
[*] Judge Grover L. Covington, retired, is serving as judge pro tem by special appointment of the Louisiana Supreme Court.