610 So.2d 1119 (1992)
Bertie JOHNSTON, Plaintiff-Appellant,
v.
Salvador FONTANA, dba Salvador's Coney Island Restaurant, Scott Martinez, Larry Coleman and Curtis Jones, Defendant-Appellee.
No. 24,043-CA.
Court of Appeal of Louisiana, Second Circuit.
December 23, 1992.
*1120 Patrick H. Wright, Jr., Monroe, for plaintiff-appellant.
Barnes, Jefferson, Edwards & Focke by Stephen A. Jefferson, Monroe, for defendant-appellee.
Before MARVIN, SEXTON, NORRIS, HIGHTOWER and STEWART, JJ.
NORRIS, Judge.
Plaintiff, Bertie Johnston, sued Salvador Fontana, d/b/a Salvador's Coney Island Restaurant, his employee, Scott Martinez, and Larry Coleman and Curtis Jones, for damages she sustained incident to an altercation between Coleman and Jones. The trial court rendered judgment of $33,966.07 against Coleman and Jones but absolved Fontana and Martinez from liability. Johnston appeals that judgment, asserting as error the trial court's finding that Fontana and Martinez were free from negligence. For the reasons expressed, we reverse in part and render judgment.

FACTS
On May 26, 1990, at some time between 11:00 a.m. and noon, Bertie Johnston, a 61-year-old woman, went to Salvador's Coney Island Restaurant ("Coney Island") located on DeSiard Street in Monroe. The Coney Island is an unincorporated business establishment solely owned by Salvador Fontana. It is operated by Fontana and his employees, Bertie Lowe and Scott Martinez, the latter of whom works in exchange for food and beer. It features a bar with bar stools, a juke box, and a pool table. While the restaurant serves hot dogs and hamburgers, approximately one-half of its patrons come in exclusively for beer.
Ms. Johnston positioned herself at the bar on a stool located to the immediate right of a friend, May Croft. At some time between 1:00 and 2:00 p.m., Curtis Jones and Larry Coleman arrived at the restaurant. Jones and Coleman were regulars at Coney Island, patronizing the restaurant on a weekly basis for eight and ten years, respectively. From the moment he arrived, Coleman appeared to be on drugs.
Bertie Lowe observed that Coleman was high on drugs when he entered the restaurant. R.p. 92. She testified that during the three years she had been working at Coney Island, about one-third of the time Coleman came in, he was high on marijuana. R.p. 103. She further noted that she could differentiate when he was high on drugs from when he was drunk because when he was high, he talked loud and got "out of order," but when he was drunk, he was calm and collected. On this day, he appeared high. R.p. 93. Scott Martinez, who was resting in the restaurant's back room during much of the time relevant here, thought Coleman looked like he had been drinking. R.p. 138. Salvador Fontana testified that Coleman "looked spaced out in the eyes" when he arrived at the restaurant. Fontana further stated that he can tell when people are drunk, but Coleman looked "spaced to me." R.p. 130-31.
At approximately 2:30 p.m., Fontana left Coney Island to go to the supermarket and buy cheese for the restaurant. In his absence, he left full authority over the premises with Ms. Lowe and Scott Martinez. He had previously informed both employees that when customers got rowdy, they should warn them to quiet down; if that did not work, they should call the police. R.p. 168. Shortly after Fontana left the restaurant, Coleman began to harass Jones, cursing him and threatening to "whip his ass." R.p. 93-94, 119. Although Jones attempted to ignore him, Coleman continued threatening to "whip ass."
After this went on for some time, Ms. Lowe and Martinez became sufficiently concerned to warn the two men to "knock off" the argument. Ms. Lowe testified that she warned them on three to five separate occasions, but that each time Coleman would start up again after only a brief respite. R.p. 113. Martinez testified that he issued two additional warnings to Coleman and Jones to cool down. Indeed, upon making the second warning, Martinez actually threatened to call the police. R.p. 141.
Unresponsive to the multiple warnings, Coleman made his way to the bar and sat *1121 on the stool just left of May Croft, but continued to threaten Jones. Finally, after thirty minutes of persistent provocation, Jones walked up to Coleman, grabbed him by the shoulder, and shoved him. Coleman, still sitting, fell onto May Croft who fell onto the plaintiff, Bertie Johnston. Ms. Johnston landed on the floor with a broken right ankle pinned under the weight of Coleman, Croft, and her own body.
At this point, some 10 to 15 minutes after he had originally threatened to do so, Martinez called the police. The record does not indicate how quickly the police arrived, but they were already on the scene when Fontana returned to the restaurant, ten to fifteen minutes after the altercation. Coleman was still at the restaurant when the police arrived, but Jones had already left.
Fontana drove Ms. Johnston to E.A. Conway Memorial Hospital where she spent the next eight days following surgery for the insertion of a pin into her ankle.
The court entered preliminary defaults against Jones and Coleman. Following trial, the court rendered final judgment in plaintiff's favor against Coleman and Jones. With regard to Fontana and Martinez, however, the court found no negligence, reasoning that the altercation between Jones and Coleman was "unexpected by those present." R.p. 70. On appeal, Johnston assigns as error the trial court's finding that Fontana and Martinez were free from negligence. In their answer to the appeal, Fontana and Martinez assert that the appeal is frivolous and seek damages in accordance with La.C.C.P. art. 2133.

DISCUSSION
A business establishment owes a duty to its patrons to exercise reasonable care to protect them from injury. This duty does not extend to unforeseeable or unanticipated criminal acts by independent third persons. Only when the owner, management or employees of a business have or should have knowledge of a third person's intended injurious conduct that is about to occur and which is within the power of the owner, management or employees to protect against, does the duty arise. Rodriguez v. New Orleans Public Service, Inc., 400 So.2d 884 (La.1981); Thompson v. Hodge, 577 So.2d 1172 (La. App. 2d Cir.1991); Hardin v. Munchies Food Store, 510 So.2d 33 (La.App. 2d Cir. 1987); Ballew v. Southland Corp., 482 So.2d 890 (La.App. 2d Cir.1986). When the independent, intentional, tortious or criminal acts of third persons constitute the unreasonable risk, the duty can be discharged by summoning the police at the time the proprietor knows or should reasonably anticipate that the third person poses a probable danger. Rodriguez v. New Orleans Public Service, Inc., supra; Thompson v. Hodge, supra; Hardin v. Munchies Food Store, supra, and citations therein. In Borne v. Bourg, 327 So.2d 607 (La.App. 4th Cir.1976), a restaurant was held liable for the failure of its employee to call the police when the employee knew a potentially dangerous situation was developing between two customers, one of whom was obviously drunk and was behaving erratically.
It is clear that the proprietor and employees of Salvador's Coney Island Restaurant had a duty to act when they knew or should have known that the hostility between Coleman and Jones posed a potential danger to Coney Island patrons. This duty certainly extended to Ms. Johnston who, in addition to being a patron, was seated only one bar stool away from Coleman as he repeatedly threatened Jones. The risk that plaintiff might be injured in a physical confrontation between Coleman and Jones falls squarely within the scope of the duty owed by the Coney Island to its patrons.
Our next inquiry is whether the Coney Island breached its duty. Both Salvador Fontana and Bertie Lowe admitted at trial that they were aware that Coleman was high on drugs when he entered the Coney Island. Fontana expressly testified that Coleman was "spaced out." Nevertheless, Coleman was permitted to remain, and Fontana even left the restaurant while Coleman was still on the premises. Just minutes after Fontana departed, Coleman began to issue threats to Jones.
*1122 The argument between Coleman and Jones continued for thirty minutes during which Coleman repeatedly threatened to "whip Jones's ass." Coney Island employees, Lowe and Martinez, warned the two men to settle down on at least five, possibly seven, separate occasions. Although both employees had been instructed by Fontana to call the police if a customer refused to heed a warning, neither of them attempted to do so until after Ms. Johnston had already been injured. At no time during the argument did they even ask Coleman and Jones to leave the restaurant.
While Martinez sufficiently recognized the seriousness of the situation to threaten Coleman and Jones with calling the police, he chose not to place the call, and instead permitted their hostilities to escalate for another 10 to 15 minutes at which time the physical confrontation took place. Although the police response time is not specified in the record, the police did arrive at Coney Island before Fontana returned from the market, 10 to 15 minutes after the fracas. Thus, had Martinez notified the police when he initially threatened to do so, or even asked Coleman to leave, the physical confrontation and plaintiff's resultant injuries could have been entirely avoided.
Defendants argue that the altercation between Coleman and Jones was unforeseeable given that the two men had never caused trouble in the restaurant before. Ms. Lowe and Fontana testified that the two men had engaged in loud talk before but had always complied with requests to quiet down. R.p. 100-01, 109, 112, 168. Perhaps if Coleman and Jones had behaved on this occasion as they had on others, defendants' argument might carry some weight. Here, however, Coleman made repeated threats of physical violence over a thirty minute period of time and blatantly ignored at least five warnings to cool down; thus, we cannot agree that the altercation was unexpected by those present. Indeed, Martinez admitted at trial that this was the sort of situation where "you think something is going to steam up, but you don't ever know when it's going to happen." R.p. 139. The fact that Coleman and Jones had never before caused trouble or disregarded requests to quiet down only underscores that this heated confrontation could not have been interpreted as routine behavior.
Defendants further argue that the respective sizes of Coleman and Jones made their eventual confrontation unforeseeable. Ms. Lowe testified that she never really thought a fight would ensue from the argument because Coleman is "a little old bitty squirt" and Jones is "as big as the side of the house." R.p. 94. She estimated that Coleman weighs 145 pounds and Jones, 225-230 pounds on a frame exceeding 6 feet. R.p. 95. This argument proves equally unconvincing; it is not necessarily reasonable to assume that a person under the influence of drugs will refrain from carrying out specific threats of physical violence simply because he is small. Relevant, here, is the fact that Jones (not Coleman) actually made the physical contact that caused Ms. Johnston's injuries. It was foreseeable that someone as large as Jones, badgered and physically threatened for 30 minutes by a small person but never backing away, would become sufficiently agitated to make the first physical strike. Under these circumstances, we find that the Coney Island staff should have foreseen that the violent argument between Coleman and Jones might lead to a physical confrontation between the two men, resulting in harm to patrons in the general vicinity. Thus, the Coney Island staff should have requested the men to leave the restaurant; if the request was not successful, they should have called the police for assistance. The trial court's conclusion to the contrary is manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1979). As a consequence of this finding, we reject appellees' assertion that this appeal is frivolous.

COMPARATIVE FAULT
We agree with the trial court's conclusion that Coleman and Jones were at fault for inflicting plaintiff's injury. However, we further find that Fontana, d/b/a Salvador's Coney Island Restaurant, and Martinez were also at fault for their negligent *1123 and inattentive acts. Thus, Coleman, Jones, Fontana, and Martinez are co-tortfeasors. See Thompson v. Hodge, supra, and citations therein.
The amount of plaintiff's recovery must be reduced by the amount of her own negligence. La.C.C. art. 2323. Given that plaintiff was seated only one bar stool away from Coleman as he harassed Jones, we find that the eventual altercation between the two men was foreseeable to her. Since she did not move away from the two men but instead chose to remain in the area of the argument, she too was partly at fault for her own injuries.
In determining the allocation of fault, we must consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985) (citing Uniform Comparative Fault Act § 2(b)). Factors used in assessing the parties' conduct include: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson, supra; Thompson v. Hodge, supra.
Particularly relevant to our assessment of each party's degree of fault are the following factors: Coleman and Jones are intentional tortfeasors. Although it was Jones who ultimately made physical contact, he did so only after enduring 30 minutes of persistent threats from Coleman. Thus, Coleman instigated the incident. Bertie Lowe warned the two men to settle down on three to five occasions. Scott Martinez, who was resting in the restaurant's back room during some of the argument, issued two warnings to Coleman and Jones. In direct disregard of their employer's instructions, neither Lowe nor Martinez called the police when the two men refused to heed the warnings. Given that Martinez was away from the scene of the argument for some time, we recognize that his degree of fault is somewhat less than that of Ms. Lowe. Plaintiff, rather than move to a safer part of the restaurant, chose to remain seated only one stool away from Coleman as he continued to threaten Jones.
Having considered the conduct of each party and the relation between that conduct and plaintiff's injuries, we allocate individual fault accordingly: 30% to Coleman, 20% to Jones, 20% to Ms. Lowe (who is not a party to this suit), 10% to Martinez, and 20% to plaintiff. Fontana, as employer, is 30% vicariously liable for the fault of his employees, Lowe and Martinez. La. C.C. art. 2320. We further note that Fontana is solidarily liable for 50% of plaintiff's recoverable damages since plaintiff's degree of fault is less than his own. La. C.C. art. 2324 B. Moreover, Coleman and Jones, as intentional tortfeasors, are solidarily liable for plaintiff's damages under 2324 A, subject to reduction for plaintiff's percentage of fault pursuant to article 2323 (i.e., solidarily liable for 80% of plaintiff's recoverable damages). See Thompson v. Hodge, supra; Peacock's Inc. v. Shreveport Alarm Co., 510 So.2d 387 (La.App. 2d Cir.), writs denied, 513 So.2d 827, 828 (La. 1987); Harris v. Pineset, 499 So.2d 499 (La.App. 2d Cir.1986), writ denied, 502 So.2d 114 (La.1987) (applying principles of comparative negligence to intentional tortfeasors).

CONCLUSION
The trial court erred in failing to assign any fault to the staff of Salvador's Coney Island Restaurant. The judgment must, therefore, be rendered to reflect the appropriate percentage of liability owed by each party. For the reasons assigned, the judgment of the trial court absolving Fontana and Martinez from liability is reversed in part, and judgment is rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, BERTIE JOHNSTON, as follows:
(1) Against defendants, LARRY COLEMAN and CURTIS JONES, solidarily, *1124 in the full and true sum of TWENTY-SEVEN THOUSAND, ONE HUNDRED SEVENTY-TWO AND.86/1.00 ($27,172.86) DOLLARS, representing a reduction of 20% for the plaintiff's fault;
(2) Against defendant, SCOTT MARTINEZ, jointly and divisibly, in the full and true sum of THREE THOUSAND, THREE HUNDRED NINETY-SIX AND.61/1.00 ($3,396.61) DOLLARS;
(3) Against defendant, SALVADOR FONTANA, jointly and divisibly, in the full and true sum of TEN THOUSAND, ONE HUNDRED EIGHTY-NINE AND.82/1.00 ($10,189.82) DOLLARS; and, solidarily, to the extent of 50% of plaintiff's recoverable losses or SIXTEEN THOUSAND, NINE HUNDRED EIGHTY-THREE AND .04/1.00 ($16,983.04) DOLLARS.
All sums awarded by this judgment bearing interest from the date of judicial demand.
All rights of contribution are reserved.
The costs of this appeal are assessed to appellees, Salvador Fontana, d/b/a Salvador's Coney Island Restaurant, and Scott Martinez.
REVERSED IN PART AND RENDERED.
SEXTON, J., dissents with reasons.
HIGHTOWER, J., dissents with written reasons.
SEXTON, Judge, dissenting.
Upon this record, I am not prepared to say that the trial court was clearly wrong that this fracas was unanticipated under the circumstances of the case.
HIGHTOWER, Judge, dissenting.
As I read the majority opinion, the following points are emphasized as distinguishing the situation at hand from past experiences at Coney Island:
(1) Larry Coleman appeared to be high on marijuana (although this apparently had been true on about one-third of his visits there);
(2) Coleman told Curtis Jones, a number of times, he was going to "whip" a certain part of his anatomy;
(3) Two Coney Island employees gave several admonitions, including one warning by Scott Martinez that he would otherwise call the police.
The trial judge, however, expressly considered and weighed all of these same facets. Furthermore, and most assuredly, I cannot join in a characterization of Coleman's words, directed at Jones, as a "violent argument" between the two men.
Clearly, the matter of whether the Coney Island owner or employees should have foreseen the potential for injurious conduct is a factual question. Here, the trial judge, upon considering the identical factors mentioned in the opinion, found the physical exchange unanticipated. And, even after repeated, careful evaluations of the testimony, I do not view that finding as clearly wrong.
Like Judge Sexton, I must respectfully dissent.