617 So.2d 967 (1993)
Rita M. GUILD
v.
CITY OF NEW ORLEANS Through the NEW ORLEANS PUBLIC LIBRARY.
No. 92-CA-1476.
Court of Appeal of Louisiana, Fourth Circuit.
April 15, 1993.
*968 J. Browne Larose, III, New Orleans, for plaintiff/appellant.
Angelique A. Reed, Asst. City Atty., New Orleans, for defendant/appellee.
ARMSTRONG, PLOTKIN and JONES, JJ.
PLOTKIN, Judge.
Plaintiff Rita M. Guild appeals a trial court judgment dismissing her suit against defendant City of New Orleans. We reverse and render.

Facts
Ms. Guild injured her right foot on April 3, 1989, when she fell from a 8.75-inch platform in the meeting room at the Algiers branch of the New Orleans Public Library. She brought suit against the library in strict liability and negligence.
Ms. Guild testified that she had been sitting at a table which was situated on top of the platform for at least an hour and a half receiving income tax assistance just prior to the accident. She said that once her consultation with the tax volunteer was completed, she stood up, shook the consultant's hand, turned around, took one or two steps, and fell. Ms. Guild claims that she had forgotten about the platform and that she thought the floor was all one level.
Ms. Guild's testimony concerning the conditions in the room which contributed to her impression that the floor was all one level was uncontroverted at trial. Those conditions, as described by Ms. Guild, included the following: (1) the lighting in the room was very dim, (2) the carpeting on the floor and the vinyl on the platform were very similar in color, and (3) the room contained no signs or markers indicating the need to step down. Ms. Guild also testified that no one alerted her to the danger.
Ms. Guild also presented the testimony of J.D. Roberts, a safety consultant, who examined the room on February 27, 1991, by which time the room had undergone extensive renovations. Thus, Mr. Roberts based his opinion in part on Ms. Guild's description of the room at the time of the accident. Mr. Roberts concluded that the conditions in the room were not safe, that those conditions made it difficult to delineate between the edge of the platform and the floor, especially in view of the amount of time the plaintiff had spent sitting on the platform, and that the conditions created an unreasonable risk of harm. Mr. Roberts said that the defendants should have provided some type of channeling to assist people climbing onto and down from the platform.
In rebuttal, the defendants presented the testimony of Diana Schaubhut, head librarian at the Algiers branch, and Annis Rae Reid, head of library branch services. Although both witnesses testified concerning the condition of the meeting room prior to the renovations, neither could describe the room on the day of the accident in question. Ms. Schaubhut said that she thought the platform was delineated from the floor by a silver metal strip designed to hold the vinyl in place, but she was not certain. Ms. Reid corroborated Ms. Guild's testimony that the lighting was dim at the time of the accident, while Ms. Schaubhut corroborated Ms. Guild's statement that the carpeting on the floor and the vinyl on the platform were similar in color.
After hearing all the evidence, the trial court dismissed Ms. Guild's suit. Ms. Guild appeals.

Liability of defendant
Ms. Guild claims that the City of New Orleans should be held liable for her injuries under either a strict liability or a negligence theory. In order for a plaintiff *969 to recover in strict liability, he must prove the following elements: (1) the thing which caused the damages was in the care, custody, and control of the defendant; (2) the thing had a vice or defect which created an unreasonable risk of harm; and (3) the injuries were caused by the defect. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106, 1112 (La.1990); Loescher v. Parr, 324 So.2d 441 (La.1975). Additionally, under the provisions of LSA-R.S. 9:2800, a plaintiff seeking to prove strict liability against a public body, like the City of New Orleans in this case, is required to prove actual or constructive notice of the dangerous condition. Since the major difference between a typical strict liability case and a negligence case is that the plaintiff in a negligence case is required to prove that the defendant knew or should have known of the risk involved, Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982), the elements of proof in strict liability cases and the elements of proof in negligence cases against a public body are virtually the same.
In the instant case, the City admits that it had care, custody and control of the premises where the accident occurred. Additionally, the plaintiff's injuries clearly were caused, at least in part, by the condition of the premises where she fell. Further, the defendants obviously knew about the condition of the premises. Thus, the only remaining issue is whether the plaintiff proved by a preponderance of the evidence that the condition of the premises constituted a vice or defect which created an unreasonable risk of harm.
Generally, Louisiana courts have determined that not every imperfection constitutes a defect. Fox v. Housing Authority of New Orleans, 605 So.2d 643, 645 (La.App. 4th Cir.), writ denied 607 So.2d 570 (La.1992). In order to be considered defective, "the imperfection must pose an unreasonable risk of injury to persons exercising ordinary care and prudence." Id. The determination of whether a particular condition is a defect is not mechanical, but merely provides guidance to judges in evaluating the risks imposed by the condition. Id. The judge must "weigh certain considerations including the gravity of the risk and the harm, the individual and societal rights and obligations, and the social utility involved." Id.
Using these standards, we find that the plaintiff in the instant case proved by a preponderance of the evidence that the conditions in the meeting room at the Algiers branch of the New Orleans Public Library on April 3, 1989 were defective because they posed an unreasonable risk of harm. As noted, the plaintiff's testimony that she was unable to differentiate between the height of the platform and the level of the regular floor because of the poor lighting and the similarity of the color of the two types of flooring was not contradicted by the defendant's evidence.
The trial court, in dismissing the plaintiff's case, indicated in his reasons for judgment that he discounted Mr. Roberts' testimony because it was based on the assumption that the two types of flooring were approximately the same color, an assumption which he found was contradicted by Ms. Schaubhut and Ms. Reid. However, a close reading of the transcript reveals that Mr. Roberts' assumption was in fact supported by Ms. Schaubhut's testimony and was not contradicted by Ms. Reid, who simply said that the platform had a vinyl covering while the floor was covered with a "dirty brown" carpet; she did not indicate the color of the vinyl. The trial court also found no "material evidence" that the room was "unusually or unreasonably dark." However, the only evidence in the record on that issue is Ms. Guild's testimony and Ms. Reid's testimony. Ms. Reid stated that the lighting in the meeting room prior to the renovations was not adequate for reading. She also admitted that additional lighting was added as part of the renovations. That testimony does not contradict Ms. Guild's assertion that the lighting conditions contributed to her accident.
Since Ms. Guild proved by a preponderance of the evidence that the conditions of the premises were unreasonably dangerous and since the defendant failed to present evidence rebutting that proof, the trial court was manifestly erroneous in dismissing her claim. The trial court decision was *970 not based on a credibility call, but on a misstatement of the evidence presented by the defendant. The judgment dismissing the plaintiff's case is reversed.

Comparative negligence of the plaintiff
Since the trial court dismissed the plaintiff's actions, he failed to rule on the plaintiff's comparative negligence. In fact, the trial court found that the accident was caused wholly by the plaintiff's inattention. We also find that the plaintiff's inattention was a significant factor in causing the accident and the ensuing injuries. The plaintiff admitted that she had turned around and was facing the room when she took the one or two steps which resulted in her fall. She also admitted that she was not looking where she was walking. Thus, we find the plaintiff 50 percent comparatively negligent in causing the accident and injuries. The plaintiff's recovery is therefore reduced by 50 percent.

Damages
The plaintiff presented evidence that she incurred $544 in medical expenses at Westside Orthopaedic Clinic and that she spent $175.71 on prescription medicine, for a total of $719.71. She also testified that she lost about $600 in wages from missing work for seven weeks, for a total loss of special damages of $1319.71. The plaintiff is entitled to recover 50 percent of that amount, or $659.85 in special damages, from the defendant.
Concerning general damages, the plaintiff testified that she experienced great pain in her foot in the weeks following the accident and that she consulted a doctor for almost a year. She also stated that she was still having pain on a daily basis at the time of the trial. Ms. Guild said that her physical activities had been severely hampered by the injury, since she is no longer able to dance, roller skate, jog, or go camping with her sons. Further, Ms. Guild stated that she is unable to wear heels as she did regularly prior to the accident.
Despite Ms. Guild's testimony that she had no problems with her foot prior to the accident, her physician, Dr. Arthur Kleinschmidt, attributed most of her continuing problems with her right foot to an injury and surgery which occurred 29 years prior to the accident in question. Dr. Kleinschmidt stated that Ms. Guild had degenerative changes in the foot or arthritis, which would eventually have caused her to experience the problems she was having at the time of trial. He felt that the problems experienced immediately after the accident were caused by the accident. Additionally, he admitted that the accident probably resulted in an aggravation or exacerbation of Ms. Guild's previously-existing problems.
In light of all the evidence on the effect of the injury on Ms. Guild's lifestyle, we find that the plaintiff incurred $10,000 in general damages caused by the pain and suffering she experienced immediately following the injury, as well as the aggravation of the pre-existing injury and the arthritic condition. The defendant is liable for 50 percent of that amount, or $5,000 in general damages.

Conclusion
Accordingly, the trial court judgment dismissing Ms. Guild's suit against the City is reversed. Judgment is rendered in favor of Ms. Guild and against the City for $5,659.85, representing 50 percent of the plaintiff's total damages, plus legal interest and costs.
REVERSED AND RENDERED.