650 So.2d 402 (1995)
Darlene DUNDAS and Jeffery Dundas, Plaintiffs-Appellants,
v.
The REAL SUPERSTORE and/or National Tea Company and Minh Tran and Tinh Tran d/b/a Fashion Nails, Defendants-Appellees.
No. 94-979.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1995.
Writ Denied April 28, 1995.
*403 Stephen Santillo, Lafayette, for Darlene Dundas et ux.
T. Robert Shelton, Thomas H. Morrow, Lafayette, for The Real Superstore and/or Nat. Tea Co.
Before DOUCET, C.J., and THIBODEAUX and SULLIVAN, JJ.
SULLIVAN, Judge.
This litigation arises out of an accident of January 15, 1992, when Darlene Dundas injured her right ankle while allegedly fleeing from a violent altercation between a female employee and the owner of a nail salon located in The Real Superstore in Lafayette. Mrs. Dundas and her husband, Jeffery, named as defendants in this action National Tea Company d/b/a The Real Superstore and Minh Tran and Tinh Tran d/b/a Fashion Nails. The plaintiffs subsequently dismissed their claims against the National Tea Company, proceeding to a bench trial against only the Trans d/b/a Fashion Nails. The plaintiffs appeal an adverse judgment rejecting their demands. For the following reasons, we reverse the judgment of the trial court.

FACTS
On January 15, 1992, Mrs. Dundas presented herself for a manicure at Fashion Nails, a business located on the second floor of The Real Superstore in Lafayette. She was greeted by an employee, Diane Phuong, who began to perform the manicure.
A few minutes later, Tinh Tran, the owner of the shop, walked in and began speaking to Ms. Phuong in Vietnamese. According to Mrs. Dundas, Ms. Phuong continued with the manicure without replying to Tran or looking at him. Mrs. Dundas testified that Tran at first spoke in a normal tone but that his voice soon became louder. When Ms. Phuong finally looked up, Mrs. Dundas observed that she had tears in her eyes. While holding Mrs. Dundas' hand, Ms. Phuong stood and pointed at Tran, speaking rapidly in Vietnamese. Tran began walking toward the two women, speaking loudly and apparently very upset. He then grabbed a light fixture from an adjacent manicure table and smashed it onto the counter. When Mrs. Dundas saw Tran reach for a second light fixture, she *404 pulled her hand from Ms. Phuong's and fled to the door, leaving behind her purse. As she was descending the stairs, her right foot turned inward, resulting in the injuries at issue herein.
Paul Vallier, a Superstore employee who was bagging groceries nearby, was the first to assist Mrs. Dundas at the foot of the stairs. He testified that he heard glass breaking upstairs and he observed the plaintiff running down the stairway. After helping Mrs. Dundas into a chair, he then went upstairs to retrieve her purse. He testified that Ms. Phuong told him at least three times to "Call the police!"
Lila Perroncel, the manager of an optical store in the Superstore, also assisted the plaintiff. She described Mrs. Dundas as frightened, in tears and in pain. She also heard Mrs. Dundas refer to "fighting upstairs" and that she was "afraid of the man in the shop". Ms. Perroncel also heard Ms. Phuong say, "Don't worry. He always acts that way". Margaret Ansley, security supervisor for the Superstore, corroborated Ms. Perroncel's testimony that the plaintiff referred to "fighting" in the nail shop and Ms. Phuong's statement that "He always acts that way".
Delores Sewell, a paramedic with Acadian Ambulance, testified that when she arrived, Mrs. Dundas was almost hysterical and trembling from head to toe. Mrs. Dundas reported that she ran out of the room because she feared for her life and she didn't know what would happen next. Observing Mrs. Dundas to be in pain with a swollen right ankle, Ms. Sewell immobilized the limb and applied an ice pack to the foot before transporting her to Lafayette General Hospital.
Officer Reginald Thomas investigated the incident for the Lafayette police department. He took a statement from Tran, who at that time admitted that he had become irate during a small argument and had broken a lamp next to where Mrs. Dundas was sitting. Tran also told Officer Thomas that Mrs. Dundas appeared scared when she exited his place of business.
At trial, Tran and Ms. Phuong admitted that they spoke loudly in Vietnamese; however, they denied that they argued in Mrs. Dundas' presence. Tran testified that he and Ms. Phuong were discussing the lack of customers at the Superstore location when Ms. Phuong suggested that he repair a light fixture. He explained that he accidentally broke the fixture when he suddenly jumped up after Ms. Phuong suggested that he close this shop if business did not improve. He denied telling the police officer that he was involved in an argument.
According to Ms. Phuong, Tran did not advance toward the plaintiff during their conversation. She also stated that Mrs. Dundas did not run out of the shop nor did Mrs. Dundas appear frightened when she left.

LIABILITY
In rejecting the plaintiffs' claims, the trial court found that the testimony of Mrs. Dundas, Tran and Ms. Phuong was not inconsistent. The court concluded that Mrs. Dundas simply acted unreasonably in mistaking the conversation in Vietnamese for a fight.
Mindful of the great discretion afforded the trier of fact on questions of credibility, we must respectfully disagree with the trial court's finding that the parties' testimony was not conflicting. Although the language barrier may have created some confusion, a careful review of the record reveals that Mrs. Dundas' description of the events that took place cannot be reconciled with the testimony of Tran and Ms. Phuong.
Mrs. Dundas described a loud argument involving tears, shouting and pointing; Tran and Ms. Phuong testified that they were only speaking loudly in their native language. Mrs. Dundas' description of Tran deliberately breaking one light fixture and reaching for another is inconsistent with Tran's explanation that he accidentally broke the fixture while repairing it. Finally, Ms. Phuong's testimony that Mrs. Dundas did not run out of the shop and did not appear frightened is inconsistent with the testimony of the independent witnesses who observed Mrs. Dundas' demeanor immediately after the accident. The testimony of those witnesses who came to Mrs. Dundas' aid provide strong corroboration for Mrs. Dundas' claim that *405 she reasonably fled for her safety from a fight.
A business owner has a duty to provide his patrons with a reasonably safe place; included in that duty is the proprietor's obligation to protect his guests from harm at the hands of an employee, another guest or a third party. Johnston v. Fontana, 610 So.2d 1119 (La.App.2d Cir.1992), writ denied, 618 So.2d 407 (La.1993); Boue v. Loomis Armored, Inc., 575 So.2d 527 (La. App. 5th Cir.1991). We find that Tran breached this duty by engaging in a hostile encounter with his employee, particularly when that employee was performing a service in such close proximity to a patron.
We also find that, although Mrs. Dundas acted reasonably in fleeing, she must bear some responsibility for her inattentiveness while descending the stairs. When we consider the deliberateness of Tran's conduct and Mrs. Dundas' justification for proceeding in haste, we assign 20% fault to Mrs. Dundas and 80% fault to Tran.

DAMAGES
The court of appeal may fix quantum in a suit for damages, where the plaintiff's demands based on liability were rejected at trial, but the court of appeal reverses the liability finding on appeal. Courville v. Piggly Wiggly Bunkie Co., Inc., 614 So.2d 1366 (La.App. 3rd Cir.1993). The reviewing court may make an award which is just and fair for the damages revealed by the record, where the trial court has made no award for damages. Fox v. Our Lady of Lourdes Regional Medical Center, 550 So.2d 379, writs denied, 556 So.2d 1263, 1264 (La.1990).
Five days after receiving emergency treatment, Mrs. Dundas was seen by an orthopedic surgeon, Dr. John Schutte. X-rays revealed that she sustained two small avulsion fractures in her ankle, i.e. bits of bone that were pulled loose from the over-stretching of ligaments. He initially observed swelling and bruising, which had improved after about five weeks, and his recommended course of treatment included bed rest, elevation of the foot and immobilization with a cast. On her last visit of March 19, 1992, Dr. Schutte noted that, clinically, Mrs. Dundas' condition had improved but that her pain had not yet resolved. He believed that the injury would heal with time, and he predicted that she could return to work as a licensed practical nurse by mid-April of 1992.
On March 31, 1992, Mrs. Dundas sought treatment from another orthopedic surgeon, Dr. Louis Blanda. Dr. Blanda agreed with Dr. Schutte's diagnosis, but he did not believe that Mrs. Dundas could yet return to full time nursing. Instead, he prescribed two months of physical therapy and anti-inflammatory medication. He released her on June 2, 1992, with the recommendation that she consult Dr. Thomas Laborde for a pain management program. Dr. Blanda stated that it was common for fractures involving the weight bearing bones in the ankle to remain painful for several months or even years.
Mrs. Dundas did not return to Dr. Blanda until one year later, for the first time complaining of pain and swelling in her right knee. Dr. Blanda ordered MRIs of her ankle and knee, these studies revealing some degenerative arthritis in the ankle and a possible meniscus tear of the knee. An arthroscopic examination of the knee, however, did not reveal any internal damage. Further, Dr. Blanda could not directly relate Mrs. Dundas' knee pain to the accident of January 15, 1992.
Following Dr. Blanda's advice, Mrs. Dundas was also treated by Dr. Thomas Laborde, a rehabilitation specialist, from July 15, 1992 through September 22, 1992. He recommended that she resume physical therapy and change her medication to alleviate her continued complaints of intermittent pain and throbbing while walking and driving. At the time of her release, some eight and a half months after the accident, Dr. Laborde believed that she was ready to return to work as a full time practical nurse. Like Dr. Blanda, Dr. Laborde could not relate her knee pain to the accident.
Mrs. Dundas also consulted a clinical psychologist, Dr. Frank T. Friedberg, for problems with increased anxiety and sleep disturbance, symptoms which she related to her accident of January 15, 1992. After administering *406 an MMPI personality inventory, Dr. Friedberg concluded that Mrs. Dundas was a solid person who had a tendency to minimize, rather than magnify her emotional and physical difficulties. Nonetheless, he testified that she exhibited the clinical symptoms of post traumatic stress disorder, including anxiety and depression, superimposed on the physical problems with her foot. Dr. Friedberg believed that she did sustain an emotional trauma related to her accident but that she had greatly improved over the course of twelve counseling sessions.
Our research has revealed a range of $10,000 to $15,000 in general damages for ankle injuries which persist for several months but with no surgery or permanent disability involved. See Minvielle v. Lewis, 610 So.2d 942 (La.App. 1st Cir.1992); Guild v. City of New Orleans, 617 So.2d 967 (La. App. 4th Cir.1993); Muse v. NOPSI, 546 So.2d 506 (La.App. 4th Cir.), writ denied, 551 So.2d 1325 (La.1989); and Breaux v. J.C. Penney Co., 617 So.2d 130 (La.App. 5th Cir. 1993). We find that Mrs. Dundas is entitled to an award in the upper end of this range in view of her extensive course of treatment. We therefore fix her general damages at $15,000.
Through the testimony of Dr. Friedberg, Mrs. Dundas has also shown that she has sustained a post traumatic stress disorder, albeit a mild case. The record reveals that Mrs. Dundas has a stable personality and that her symptoms of anxiety and depression resolved shortly after her return to work. We find that she is entitled to an award of $3,000 for this element of damages.
Mrs. Dundas has also submitted medical bills totalling $15,035.74 for expenses which she claims are related to the accident. Defendants object to over $7,000 of these bills, contending that charges incurred for arthroscopic surgery to the knee and for orthopedic consultations in 1993 cannot be attributed to the accident. Inasmuch as neither Dr. Laborde nor Dr. Blanda could directly relate Mrs. Dundas' knee pain to her accident, we agree that the expenses for arthroscopic surgery are not recoverable. We find those expenses to total $3,067 in hospital charges and doctor's fees. This amount will be deducted from the submitted bills, resulting in an award of $11,968.74 in medical expenses. We find that all other contested expenses were necessary for the treatment of plaintiff's ankle and will be allowed.
Mrs. Dundas has also filed a claim for past lost wages and loss of earning capacity. At the time of the accident on January 15, 1992, she was employed as a full time practical nurse at Lafayette General Hospital; she also supplemented this income with private duty nursing assignments. Her gross earnings for the year immediately preceding the accident totalled $22,856.16, or approximately $1,904.68 per month. She was unable to work for eight and a half months after the accident, and upon her return to work at Lafayette General, she was reassigned to a part-time nursing pool because her former full time position was no longer available. As a part-time employee, she was no longer eligible to participate in the hospital's retirement plan; health insurance was still available but at a higher premium. Her gross earnings from Lafayette General at the time of trial were approximately $1,207.63 per month.
Mrs. Dundas testified that she can no longer work 12 to 15 hour shifts, as she did in the past, because of residual pain from her ankle. She also testified that she has refused other offers of employment because of her inability to stand for extended periods of time. No physician, however, testified that Mrs. Dundas sustained any permanent disability. Both Drs. Blanda and Laborde released her to full time employment, and Dr. Blanda testified that, upon her release, he believed her pain problems were mild, being more bothersome than severe.
Based upon the above testimony, we must conclude that Mrs. Dundas has failed to prove a loss of future earning capacity. It appears that her reduced earnings in 1993 are the result of the unavailability of a permanent, full time position at Lafayette General rather than her physical condition. Mrs. Dundas is entitled to compensation for past lost wages during her eight and one-half *407 month period of disability. Using her 1991 gross income, we find her past lost wages to be $16,200.
Jeffery Dundas testified that his wife had withdrawn from him and their two children for several months after the accident. She no longer participated in family outings and was unable to do any of her household chores during this period. In addition to running the household during his wife's convalescence, Dundas worked overtime at his own job to help offset the reduction in his family's income caused by his wife's inability to work. However, he admitted that the situation at home improved as his wife gradually increased her activities. We find that an award of $3,500 will compensate Dundas for the eight month disturbance in his marital life caused by his wife's temporary disability.
To recap, we award the following in damages to plaintiffs, Darlene and Jeffery Dundas, subject to a 20% reduction for the comparative fault of Darlene Dundas:

Darlene Dundas
 General Damages------------- $15,000.00
 Medical Expenses------------ 11,968.74
 Lost Wages------------------ 16,200.00
Jeffery Dundas
 Loss of Consortium---------- $ 3,200.00
 __________
 Total ---------------------- $46,368.74

Although the plaintiffs named both Tinh and Minh Tran as defendants, we find that only Tinh Tran, as the owner of Fashion Nails, should be cast in judgment.
For the above reasons, judgment is rendered in favor of Darlene Dundas in the amount of $34,535 and Jeffery Dundas in the amount of $2,560, with legal interest on both awards from date of judicial demand until paid, against Tinh Tran d/b/a Fashion Nails. All costs of these proceedings are assessed to defendant, Tinh Tran d/b/a Fashion Nails.
REVERSED AND RENDERED.