770 So.2d 766 (2000)
Rayford J. LeBLANC, II
v.
William STEVENSON, III and Audubon Indemnity Company.
No. 00-C-0157.
Supreme Court of Louisiana.
October 17, 2000.
*768 Patrick A. Junleau, Jr., Lafayette, Counsel for Applicant.
Lamont Paul Domingue, Voorhies & Labbe, Lafayette, Counsel for Respondent.
JOHNSON, Justice.
The plaintiff, Rayford LeBlanc, II, brought this action to recover damages for injuries he sustained as a result of an accident at his home in Lafayette Parish. After a jury verdict for defendant, William Stevenson, the court of appeal reversed and found that Stevenson's negligence caused the accident. It apportioned 60% fault to Stevenson and 40% fault to Le-Blanc, and awarded LeBlanc total damages of $482,053.00. We granted certiorari to review the correctness of that decision.

FACTS AND PROCEDURAL HISTORY
Rayford LeBlanc, a thirty-seven year old carpenter at the time of the accident, had parked his pickup truck on the side of his driveway one rainy day in December of 1995. When he went to move the truck, it would not move because it was stuck in the mud. LeBlanc contacted Hoyt's Automotive, a professional towing company, which recommended that LeBlanc leave the truck alone until the ground dried. Le-Blanc's friend, William Stevenson, offered to use his 4-wheel drive Suburban[1] to pull the truck out the mud; however, LeBlanc declined. Once the ground was dry, LeBlanc *769 contacted Hoyt again to come out and assist him, but Hoyt was not available. Stevenson offered again to help LeBlanc extricate the truck; this time LeBlanc accepted his offer. LeBlanc purchased a "Tug-em" strap at a local hardware store to assist in moving the pickup truck. The men had agreed that LeBlanc would put his truck in gear and then signal Stevenson to begin moving.
On the first attempt, Stevenson backed his Suburban in front of the truck, and they hooked the Tug-em strap to both the vehicles, one end of the device to the frame of the truck and the other to the Suburban's trailer hitch. Both men entered their vehicles, and LeBlanc gave the signal. However, on the first attempt, the strap unhooked from the frame of the truck.
On the next attempt, Stevenson recommended that the Suburban's front wheels be moved to the road instead of the grass in order to get better traction. In doing this, the men discovered that the Tug-em strap was too short, so LeBlanc found a nylon binding strap in his truck which they connected to the Tug-em strap. LeBlanc hooked the binding strap around the bumper of his truck and then hooked the binding strap to the Tug-em strap. After the men reentered their vehicles, LeBlanc again gave the signal. This second attempt failed because the hook on the Tugem strap tore the binding strap into two pieces.
LeBlanc then decided to tie the Tug-em strap to the two pieces of binding strap. As LeBlanc crouched down tying the straps, Stevenson walked to the front of his Suburban to reposition it. When Stevenson moved the Suburban forward, the knots of the straps tightened around Le-Blanc's hand. LeBlanc yelled for Stevenson to stop, but LeBlanc was pulled backwards and a portion of his left index finger was severed. As a result of the accident, LeBlanc suffered a traumatic amputation of his left index finger.
LeBlanc filed a petition for damages in December of 1996, naming William Stevenson, III and Audubon Indemnity Company as defendants. LeBlanc alleged that his injuries were the result of Stevenson's negligence in failing to make certain Le-Blanc was clear of harm before operating the Suburban, failing to warn LeBlanc that he would be moving the Suburban, failing to operate the Suburban in a safe and prudent manner, failing to take measures to avoid causing harm to LeBlanc, and failing to be attentive to the risks and harm his actions presented to LeBlanc. In December of 1998, this matter was tried for two days by a jury. The jury found that Stevenson's actions were not the legal cause of the accident therefore finding no fault on Stevenson's part. From this verdict, LeBlanc appealed.
The court of appeal reversed the jury verdict finding Stevenson 60% at fault and LeBlanc 40% at fault and awarded $482,053.00 in damages. In applying the duty/risk analysis, the court of appeal concluded that: 1) when LeBlanc accepted Stevenson's second offer, Stevenson assumed the responsibility to accept any risks that may be involved in towing a vehicle; therefore Stevenson had a duty to act as a reasonable person; 2) this duty was breached when Stevenson failed to await LeBlanc's signal or to inform Le-Blanc of his intent to realign his Suburban; 3) Stevenson's failure to obey the protective instructions was the cause-in-fact of LeBlanc's injuries; and 4) Stevenson's failure to act in a reasonable manner by following the protective instructions was the legal cause of LeBlanc's injuries. The court of appeal also ruled that LeBlanc did not exercise a reasonable degree of care whereby LeBlanc: 1) knew that he and Stevenson lacked the skill and qualification to complete this task, 2) had the option to decline Stevenson's second offer of assistance and await professional help, and 3) was not pressured into moving this truck for work because he owned another truck. For these reasons, the court of appeal found LeBlanc 40% at fault. The court of *770 appeal further found that LeBlanc was entitled to $100,000 in general damages; $7,459 in past medical damages; $5,698 in future medical expenses; $54,861 in past lost income; and $314,035 in future lost income, subject to a reduction of 40% for his comparative fault. LeBlanc v. Stevenson, 99-885 (La.App. 3 Cir. 12/22/99), 756 So.2d 356. Stevenson filed an application for certiorari with this court, and by order dated March 24, 2000, we granted the writ application. LeBlanc v. Stevenson, 00-0157 (La.3/24/00), 757 So.2d 646.

DISCUSSION

STANDARD OF REVIEW
An appellate court may reverse a lower court's factual findings when the record (1) reflects that a reasonable factual basis does not exist for the finding and (2) establishes that the finding is clearly or manifestly wrong. Stobart v. State, [Through] Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993). If a court of appeal finds that the trial court committed reversible error of law or manifest error of fact, the court of appeal must determine the facts de novo from the record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Although the appellate court must accord deference to the trial court, it is cognizant of our constitutional duty to review facts, not to decide if it, as a reviewing court, would have found the facts differently, but to determine whether the trial court's verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216, 221.

NEGLIGENCE/LIABILITY

DUTY/RISK ANALYSIS
In Stevenson's first assignment of error, he argues that LeBlanc's injury was not caused by Stevenson's negligence. Stevenson also asserts that he did not breach a duty owed to LeBlanc, for he was only assisting a friend without compensation. Stevenson testified that LeBlanc was totally in charge of the towing operation, and LeBlanc supplied all the equipment and tools, except the Suburban, to complete the task. Stevenson further testified that one end of the Tug-em strap was on the ground when he entered his Suburban, and it is reasonable to infer that LeBlanc began to tie the strap after Stevenson walked away. Stevenson also suggests that the jury determined that Le-Blanc's attempt to connect the straps was the proximate cause of his injury and not the result of any actions on his part.
Stevenson also argues that the jury's verdict was reasonable and should have not been disturbed by the court of appeal. Stevenson further argues that the court of appeal's ruling was based upon facts not supported by evidence, impermissible determinations, and impermissible substitutions of its own evaluation. Therefore, Stevenson concludes that the jury's determination that Stevenson was not at fault in causing LeBlanc's injury was not erroneous and should be reinstated.
To establish liability in a negligence case under the duty-risk analysis, LeBlanc must prove that: 1) Stevenson owed a duty to LeBlanc, 2) the requisite duty was breached by Stevenson, 3) the risk of harm was within the scope of protection afforded by the duty breached, and 4) the conduct in question was a cause-infact of the resulting harm. Campbell v. Louisiana Department of Transportation and Development, 94-1052 (La.1/17/95), 648 So.2d 898, 901; Mundy v. Department of Health and Human Resources, 620 So.2d 811 (La.1993).
In the case sub judice, the evidence proves that Stevenson assumed a duty when his offer was accepted to assist in towing LeBlanc's truck out of the mud. Stevenson had a duty to perform this task in a safe and a reasonable manner. This *771 duty was breached when Stevenson, as per his testimony, neither waited until LeBlanc signaled nor articulated his intent to move his vehicle. As correctly stated in Le-Blanc's brief "even if Stevenson was merely realigning his Suburban, Stevenson was still negligent for failing to warn LeBlanc of his intentions." The court of appeal correctly stated that "a failure to adhere to or obey protective instructions, such as an all-clear signal, in a situation where there is a possibility of causing great injury, is a breach of duty to protect." The evidence proves that Stevenson's failure to await the signal was a cause in fact of LeBlanc's injury. Stevenson acknowledged that before he entered his vehicle and after he entered and looked in his rearview mirror, he noticed LeBlanc crouched down, concentrating on tying the straps. Despite this, he still moved the Suburban. The evidence clearly established that Le-Blanc's finger would not have been traumatically amputated had Stevenson either made certain that LeBlanc was clear of the straps or gave or received a signal before moving the Suburban. We agree with the court of appeal in holding that "the risk of harm which LeBlanc incurred can be easily associated with Stevenson's failure to act in a reasonable and prudent manner by not following protective instructions." Pursuant to Roberts v. Benoit, 605 So.2d 1032 (La.1991), a case that dealt heavily with the concept of legal cause, we find that the court of appeal did not err in finding Stevenson liable for LeBlanc's injury.

ALLOCATION OF FAULT
In Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985), the Louisiana Supreme Court set forth five factors to be considered in apportioning fault, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) the extent of the risk created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
In the second assignment of error, Stevenson argues that the court of appeal's allocation of fault was erroneous. Stevenson argues only one of the five factors listed above, i.e. that LeBlanc was the superior actor. Specifically, he asserts that LeBlanc designed the towing operation, supplied all the necessary equipment, and tied the Tug-em to the binding strap; that LeBlanc had a duty to make sure that the operation was preformed safely; and that LeBlanc breached that duty. According to Stevenson, LeBlanc should be allocated more fault than Stevenson, who was only an assistant.
In response, LeBlanc admits that he was an actor in the accident; however, LeBlanc asserts that Stevenson was responsible for operating the Suburban, which was the main piece of equipment that caused the accident and injury.
In analyzing Watson, we agree with Stevenson that LeBlanc was the initiator of the towing process. However the design of the plan, the providing of the straps, and the tying of these straps did not cause the injury. It was not until Stevenson, who we find as the superior actor, acted (by moving the vehicle without waiting for LeBlanc to signal) or failed to act (failed to determine whether LeBlanc was clear and failed to warn LeBlanc of his intentions to move the vehicle) that created the greatest harm in this matter. Therefore, we find that the court of appeal correctly apportioned 60% of the fault to Stevenson and 40% to LeBlanc.

DAMAGES
Having determined that the trial court was manifestly erroneous in finding that LeBlanc's injuries were not caused by Stevenson's actions, we must now consider an award of damages. Where a fact finder does not reach an issue because of an earlier finding which *772 disposes of the case, the court of appeal, in reversing the earlier finding, must make a de novo determination of the undecided issues from the facts in the record. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993); Austin v. Fibrebond Corp., 25,565 (La.App. 2 Cir. 2/23/94), 638 So.2d 1110, writ denied, 94-1326 (La.9/2/94), 643 So.2d 149. The reviewing court must make an award that is just and fair for the damages revealed by the record, where the trial court, as here, has made no award for damages. Dundas v. Real Superstore, 94-979 (La. App. 3 Cir. 2/1/95), 650 So.2d 402, writ denied, 95-0470 (La.4/28/95), 653 So.2d 590. Thus, the court of appeal conducted a de novo review of the record to ascertain whether LeBlanc was entitled to damages.
In assessing damages in a personal injury case, a court must consider the severity and duration of the injured party's pain and suffering. Duckett v. K-Mart Corp., 92-385 (La.App. 5 Cir. 2/15/95), 650 So.2d 414, 416.
We note in the case sub judice that as a result of the accident, LeBlanc's left index finger was traumatically amputated, which required extensive medical treatment. The record shows that Le-Blanc sustained a total body impairment of 11%, an 18% impairment of his left arm, a 20% impairment of his left hand, and an 80% impairment of his left index finger. LeBlanc testified that days following the accident he endured excruciating pain, which required pain medication to alleviate. LeBlanc's injuries necessitated two major surgeries, but thereafter he continued to experience a shocking sensation which could only be eased by numbing his hand with ice. These complications affected his quality of life. He could no longer ride his motorcycle, jet skies, or three-wheeler. His family life was impacted. He and his wife separated, and he has been limited in his interactions with his sons. His finances have been adversely impacted. He could no longer work in a normal capacity as a carpenter. The pain and suffering experienced by LeBlanc was substantial. We find that the $100,000 awarded by the court of appeal for general damages was justified and supported by jurisprudence.
In Head v. Pendleton Memorial Methodist Hosp., 95-0461 (La.App. 4 Cir. 1/31/96), 669 So.2d 504, an award of $400,000.00 was affirmed for a woman who had the tips of two fingers amputated after she was burned by a wet-heat treatment. As a result she suffered physical and severe emotional problems. She lost use of her right hand, could no longer ambulate without the use of her walker, could not manage her own personal hygiene, and had to learn how to eat with her left hand. She was diagnosed with a 78-84% impairment of her right hand.
In LeBlanc v. Continental Grain Company, Inc., 95-813 (La.App. 5 Cir. 3/13/96), 672 So.2d 951, writ denied, 96-1526 (La.10/4/96), 679 So.2d 1383, an award of $209,000.00, though "somewhat on the high side," was affirmed for a man who had two fingers partially amputated in an industrial accident. He suffered with continued swelling and pain; eventually, one of his injured fingers had to be amputated. Le-Blanc, a carpenter at the time of the accident but who later became an electrician, suffered a loss of dexterity in his hand and would continue to have a weak grip and a loss of fine coordination. He had a 50% anatomical impairment of one finger and an 85% impairment of the index finger.
In Barbin on Behalf of Barbin v. State, 506 So.2d 888 (La.App. 1 Cir.1987), an award of $185,000.00 was upheld for a twelve-year-old student who was injured in a woodworking class at the school for the deaf. His right index finger was cut from the tip into the proximal interphalangeal joint. Permanent impairment of the finger was assessed at 58%, with an overall 15% disability to the hand. The student's damaged and disfigured finger impaired his ability to communicate by sign language and hampered his ability to pursue a career in computer science. In Williams *773 v. Stevenson, 558 So.2d 1204 (La.App. 1 Cir. 2/21/90), writ denied, 564 So.2d 324 (La.1990), an award of $5,000.00 was raised to $50,000.00 for a woman who sustained injury to her right hand when she was accidentally shot. She had her index finger amputated, underwent six surgeries, could not grasp anything with her hand, and suffered constant pain. Her hand healed with malalignment resulting in a deformed appearance. She sustained 50% disability to her right hand and had difficulty dressing herself.
In view of these cases, we find that $100,000.00 was reasonably awarded by the court of appeal to this plaintiff in these circumstances.
This Court finds that LeBlanc's past medical expenses of $7,459 and future medical expenses of $5,698 were clearly proven by the record, and therefore we will not disturb these awards. We also find that there is sufficient evidence to substantiate the award of $54,861 for past lost income.
As it relates to LeBlanc's loss of future income, the court of appeal awarded $314,035 because it reasoned that he is a carpenter by trade that has lost dexterity and his earning capacity has diminished. However, the evidence and the record show that LeBlanc demonstrates an ability to earn income as a salesman and a construction supervisor. Particularly, the record shows that in January of 1996, Le-Blanc started a new business venture (called "Cajun Food Products"), as a salesman, purchasing seafood, transporting it to Texas, and selling it to restaurants.
In 1997 LeBlanc engaged in yet another business venture when he started a residential construction and design company (named "Custom Design Home"), in which he remodeled homes. LeBlanc testified that in this company his duties consisted of: driving around different neighborhoods to find and purchase vacant lots to build homes; going to the "Metro Code" and paying for the building permits; making phone calls to subcontractors who would actually build the house; and supervising those subcontractors to make certain they were adequately performing their prospective duties. LeBlanc further testified that his partner was responsible for taking care of the interior designs of the home, such as: the plumbing, the paint, electrical items, fixtures, appliances; doors, and windows. LeBlanc also testified that most of the time he was "just standing around and watching," since the actual manual labor was done by the subcontractors, i.e., the framers, roofers, plumbers, electricians, etc. This demonstrated his ability to perform general supervisory duties and function as a general contractor even if he could no longer perform the actual construction work. Glenn Hebert, a vocational rehabilitation counselor, and Stanford McNabb, another vocational rehabilitation expert, both agreed that LeBlanc has future earning capacity as a construction supervisor. The fact that both businesses failed is not conclusive evidence of his business acumen. We find that the record and the testimony clearly proves that the court of appeal erred in awarding LeBlanc future lost income; therefore, we reverse the judgment of the court of appeal on that issue and set aside the $314,035 award.

DECREE
For the foregoing reasons, we affirm the court of appeal judgment finding that Stevenson's negligence caused the accident and that LeBlanc was comparatively liable. Therefore Stevenson was correctly apportioned 60% of the fault, and LeBlanc was correctly allocated 40% of the fault. We also find that the court of appeal was correct in holding that LeBlanc was entitled to general damages in the amount of $100,000; $7,459 in past medical expenses; $5,698 in future medical expenses; and $54,861 in past lost income, subject to a reduction of forty percent for his comparative negligence. However, we reverse and set aside the court of appeal judgment awarding LeBlanc damages for loss of future earning capacity.
*774 AFFIRMED IN PART; REVERSED IN PART.
CALOGERO, C.J., concurs in part, dissents in part and assigns reasons.
LEMMON, J., concurs in part and dissents in part from the deletion of damages for impairment of earning capacity for the reasons assigned by the Chief Justice.
VICTORY, J., dissents believing that the record supports the jury's verdict.
TRAYLOR, J., dissents and assigns reasons.
CALOGERO, Chief Justice, dissenting in part.
I agree with the majority's conclusion that the court of appeal was correct in finding the defendant, Stevenson, 60% at fault and in affirming the court of appeal's awards for pain and suffering, past and future medical expenses, and past lost income. I write separately, however, to dissent from the majority's conclusion that LeBlanc is not entitled to an award for loss of future earnings or loss of earning capacity.
At trial, plaintiff called Dr. Roy Douglas Womack, an expert in economics and finance, to establish LeBlanc's lost wages. Dr. Womack testified that LeBlanc's average yearly income as a carpenter in the three years leading up to the accident was $39,684 (1993, 1994, and 1995). Following his accident and partial amputation of his left index finger on December 21, 1995, LeBlanc's income fell substantially. In particular, his average yearly income over the three years following the accident was $21,087 indicating an average loss of $18,597 per year. Dr. Womack concluded that LeBlanc suffered $54,861 in lost past wages from the date of the accident to the date of trial (2.95 years times $18,597). (R. 745). Dr. Womack then found that LeBlanc's work-life expectancy was 19.72 years and concluded that his lost future wages from the date of trial until the end of his work-life expectancy would total $314,035 (19.72 years times $18,597 along with adjustments based on a 3.5% growth rate and a 5.1% discount rate). (R. 754).
The majority agrees with the first calculation that plaintiff suffered a loss of income from the date of injury up to trial of $54,861; however, they reject the second finding and instead find that plaintiff will suffer no loss of future earnings or earning capacity. In support of this second conclusion, the majority reasons that LeBlanc did not lose his ability to earn income as a salesman or supervisor. They point to LeBlanc's somewhat unsuccessful business ventures in 1996 and 1997 when he was being treated for his injuries and unable to carry out his previous workload as a carpenter. While I agree with the majority that LeBlanc may have the ability to work in other fields (although this is speculative) and even to venture into new business endeavors, the issue before us is not whether or not he can ever work again (surely he can); instead, the issue before us is whether the partial amputation of his left index finger will cause a reduction in the plaintiffs future earning potential.
The plaintiff in this case was a carpenter making roughly $43,000 a year prior to this injury. Following his injury, plaintiffs average income over the next three years was roughly $21,408. It is wholly inconsistent for the majority to recognize that this loss of earnings and, no doubt, earning capacity continued from the date of the accident up to trial, but not a day beyond. There is no question that plaintiff has the ability to work in other lines of employment. These other lines of employment, however, have not been as fruitful as carpentry as evidenced by LeBlanc's substantially lower income the three years following the injury.
While a person in a professional occupation would not likely suffer a loss of future earning capacity because of a partial finger amputation, as in this case, a person who needs the use of his hands on a daily basis *775 would no doubt suffer this loss. As Mr. Glenn Hebert, a vocational rehabilitation expert, testified, "The biggest problem [the plaintiff] faces, when you're trying to drive a nail, you have to hold it with these two fingers.... He can't do that because of his sensitivity when he hits himself or when you're hanging sheetrock or you're trying to put up cabinets, that finger [sic] gets in the way." (R. 713). In my view, this inability to perform these basic carpentry functions is sufficient to indicate a residual injury which causes a loss to the plaintiffs future earning capacity. As it is well accepted that LeBlanc lost $54,861 over the three year period leading up to trial, it is reasonable to conclude that he would suffer a loss of at least that monetary sum over the course of the remaining 19.72 years of his work life expectancy. I would therefore reduce the court of appeal's unsupportable award of $314,035 to a more reasonable $55,000 because I cannot conclude that there is simply no loss of earning capacity whatsoever. Therefore, I respectfully dissent in part from the majority's decision only with respect to the complete deprivation of any award for loss of future earnings or earning capacity.
TRAYLOR, J. (dissenting).
Although the court of appeal paid lip service to the manifest error rule, it promptly disregarded the jury's verdict in this case and substituted its own judgment for that of the factfinder. The record demonstrates that the jury's verdict is reasonably supported by the record and is not manifestly erroneous. Because we should reverse the judgment of the court of appeal and reinstate the jury's verdict, I dissent.
After plaintiffs truck became stuck in the mud, he mentioned to his friend, the defendant, that he needed the truck the following morning and was unable to secure professional help to extricate the truck. Defendant offered the use of his Suburban to dislodge the truck. Defendant is not a towing expert and did not profess to be one. On the other hand, plaintiff was solely responsible for purchasing the Tug-em strap and later made the decision to tie that strap to the binding strap. Although both men were inexperienced, the record demonstrates that plaintiff was the superior actor throughout the towing operation.
The jury could reasonably conclude that defendant did not breach a duty owed to plaintiff, and that his actions and omissions were not the legal cause of plaintiffs injury. The sole case cited by the court of appeal, Oliver v. Capitano, 405 So.2d 1102 (La.App. 4th Cir.), writs denied, 407 So.2d 731, 407 So.2d 734 (La.1981)[1] is distinguishable on its facts, because plaintiff was not an impaired actor.
Further, no evidence was produced that the signal given between the two men on the first two attempts was an ongoing admonition or "protective instruction" that applied even when the vehicles were not connected and no towing operation was in progress. In fact, the accident did not occur during a towing attempt, but when defendant was attempting to realign his Suburban. The jury apparently concluded that plaintiffs signaling instructions applied only to the first two towing attempts and not at other times. Because this conclusion was reasonable and is supported by the evidence adduced at trial, the court of appeal erred in substituting its own alternative interpretation of the evidence, and in making its own credibility determinations.
The unrefuted facts established at trial are that defendant was assisting a friend without compensation; plaintiff was in *776 charge of the towing operation and supplied all of the equipment for it except for defendant's Suburban; and one end of the Tug-em strap was on the ground when defendant entered his Suburban. One can infer that plaintiff began to connect the straps after defendant walked away, and that it was plaintiff's attempt to tie the straps together that was the proximate cause of the injury. The jury obviously believed that the accident was not caused by any negligence on defendant's part, but was instead proximately caused by plaintiff's actions. It was not for the court of appeal to decide whether the jury was right or wrong in reaching this conclusion the court of appeal should only have evaluated whether the jury's decision was reasonable. Because the jury's determination was reasonable and well supported by the record adduced at trial, the court of appeal should not have disturbed the district court's judgment.
NOTES
[1] The Suburban used in this accident was owned by Stevenson's employer, Central Industries, Inc., and insured by defendant Audubon Indemnity Company.
[1] In Oliver, an insane woman sat in the path of an oncoming truck and took no action to protect herself from being run over. Observing that the woman's failure to protect herself did not relieve the truck driver of his duty to observe and avoid what was in his path, the court held that an unimpaired actor's duties are not diminished by the actions of a person whose capacity is impaired.